IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NIKI P.[1], | ) |
| | ) |
|           **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:24-CV-01997-SMY |
| | ) |
| FRANK BISIGNANO, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
|           **Defendant.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Niki P. seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

### Procedural History

Plaintiff protectively filed an application for a period of disability and DIB on May 7, 2021, alleging a disability onset date of October 14, 2020 (Tr. 182-85). Plaintiff's claim was initially denied on January 5, 2022 (Tr. 78-83) and upon reconsideration on November 29, 2022 (Tr. 986-98). Plaintiff then filed a request for a hearing for an Administrative Law Judge ("ALJ") on December 19, 2022, which was held telephonically on August 15, 2023 (Tr. 52). The ALJ issued a decision denying Plaintiff's claim on October 3, 2023 (Tr. 24-51). Plaintiff requested review by the Appeals Council, which was denied on June 28, 2024, making the ALJ's decision the final decision of the Commissioner (Tr. 1-6). Plaintiff then filed a

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed.R.Civ.P. 5.2(c) and the Advisory Committee Notes.

Complaint before this Court seeking review of the Commissioner's decision on August 22, 2024.  Doc. 1.

## Issues Raised by Plaintiff[2]

Plaintiff raises the following issues for review:

1. The ALJ erred in assessing Plaintiff's use of a cane.

2. The ALJ erred in assessing Plaintiff's subjective symptom testimony.

3. The representative jobs offered by the Vocation Expert do not exist in significant numbers in the national economy.

## Legal Standard

To qualify for disability insurance benefits, a claimant must be disabled within the meaning of the applicable statutes.  Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.  An affirmative answer at either step 3 or step 5 leads to a finding that the claimant

---

[2] Because the Court remands based on the first issue raised by Plaintiff, it does not address Plaintiff's remaining arguments.  Plaintiff may raise those issues directly with the ALJ on remand.

is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### Decision of the ALJ

Before applying the five-step analytical framework with respect to Plaintiff's application, the ALJ first determined that Plaintiff met insured status through December 31, 2026 (Tr. 29). At step one, the ALJ determined that although Plaintiff had worked after her alleged disability onset date, this work activity did not rise to the level of substantial gainful activity (Tr. 29). At step two, the ALJ determined that Plaintiff had the following severe

impairments: peripheral vascular disease, obesity, asthma, residuals from strokes, right paresthesia, major depressive disorder, and generalized anxiety disorder (Tr. 30). At step three, the ALJ determined that none of these impairments or combination thereof met or medically equaled the severity of one of the listed impairments under the regulations (Tr. 30-33).

Before proceeding to step four, the ALJ concluded as follows regarding Plaintiff's Residual Functional Capacity ("RFC"):

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations: occasionally climb ramps and stairs; avoid climbing ladders, ropes, or scaffolds; occasionally balanced as defined in the Selected Characteristics of Occupations (SCO) of the Dictionary of Occupational Titles (DOT); occasionally stoop, kneel, crouch, and crawl; frequently handle, finger, and feel with the right dominant upper extremity; avoid exposure to concentrated fumes, odors, dusts, gases, and poor ventilation; complete simple, routine tasks with minimal changes in job duties and setting; avoid fast-paced production work (e.g., avoid hourly quotas); occasional interaction with coworkers, supervisors, and the general public.

(Tr. 33)

In arriving at this RFC determination, the ALJ considered Plaintiff's treatment records, her consultative examination with Dr. Linda Collinsworth, and the opinions of state-agency consultants Drs. John Peterson and Howard Tin (Tr. 34-43). The ALJ ultimately found that the evidence did not support the severity of Plaintiff's alleged symptoms (Tr. 43).

At step four, the ALJ determined that Plaintiff was unable to perform any of her past relevant work (Tr. 44). Relying on the testimony of a Vocational Expert ("VE"), the ALJ determined at step five that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform the representative jobs of Assembler (DOT# 713.687-018) and Product Checker (DOT# 726.684-110) (Tr. 45). Accordingly, the ALJ determined that Plaintiff had

not been under a period of disability as defined by the Social Security Act from her alleged onset date through the date of the ALJ's decision (Tr. 45).

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

### Agency Forms

Plaintiff was born in 1977 and was 43 years old on the alleged onset date of October 14, 2020 (Tr. 182). She filed for disability based on the following medical conditions: History of stroke, type 2 diabetes, hypertension, paralyzed on right side of the body, malignant neoplasm of the endometrium, malignant neoplasm of ovaries, asthma, arterial disease, neuropathy, anxiety, and depression (Tr. 200).

### Evidentiary Hearings

The ALJ conducted a telephonic hearing on August 15, 2023 (Tr. 52). Plaintiff was represented by counsel at this hearing (Tr. 54). At the hearing, Plaintiff testified that she needed a cane to walk because of weakness in her right side following her two strokes (Tr. 59). She explained that she could walk between 5 to 750 feet before having to stop and rest (Tr. 60). She further testified that although she briefly returned to work after her second stroke, she had dizzy spells resulting in a fall and has not worked since (Tr. 63).

Vocational Expert Steve Dolan also testified (Tr. 70). In response to the ALJ's hypothetical describing the limitations in Plaintiff's RFC, the VE testified that Plaintiff would be unable to perform any of her past relevant work (Tr. 74). However, the VE testified that Plaintiff could perform the work of an assembler or product checker, noting that these were

broad categories consisting of several DOT titles and that cumulatively the categories represented about 25,000 jobs in the national economy (Tr. 74-75).

## Relevant Medical Records

The Court reviewed Plaintiff's inpatient hospital records from Baptist Medical Center and BJC Healthcare – Christian Hospital (Tr. 561-1725, 2400-2532). The Court also reviewed Plaintiff's treatment records from St Louis Cardiology Consultants (Tr. 1918-49, 2381-91) and her physical therapy records following her second stroke at Alton Memorial Hospital (2371-80).

## State Agency Consultants' Opinions

No medical opinions were prepared by state-agency consultants at the initial determination level because insufficient evidence was produced (Tr. 82). At the reconsideration level, a medical review was performed by Dr. John Peterson (Tr. 93-95). Dr. Peterson found that Plaintiff was limited to occasionally lifting 20 pounds and frequently lifting 10 pounds (Tr. 93). Dr. Peterson then noted that a "medically required hand-held assistive device is necessary" for Plaintiff to ambulate, and that she was limited to standing/walking for two hours in an eight-hour workday (Tr. 93). He also found that Plaintiff had several postural limitations in that she was never able to climb ladders and could only occasionally perform other postural exertions (Tr. 93). Regarding manipulative limitations, Dr. Peterson found that Plaintiff was limited in handling and fingering objects with her right hand as a result of her two strokes (Tr. 94). The only environmental limitation noted by Dr. Peterson was that Plaintiff should limit her exposure to fumes, dusts, gases, etc (Tr. 94).

## Discussion

Plaintiff argues that the ALJ erred by concluding her use of a cane was not medically necessary. Doc. 12 at 6. For the reasons given below, the Court agrees.

The ALJ dedicates a sparse three sentences of her RFC determination to Plaintiff's use of a cane. First, the ALJ stated that "recent treatment notes show [Plaintiff] has decreased use" of the cane (Tr. 41 (citing Tr. 2381)), and noted that during the consultative evaluation, Plaintiff stated she was able to walk some without her cane (citing Tr. 2366). Thus, the ALJ concluded "there is no indication the cane has been medically necessary throughout the period at issue" (Tr. 41). Separately, when considering the opinion of Dr. Peterson, who found the cane to be medically necessary (Tr. 93), the ALJ stated that this finding was not fully consistent with "subsequent evidence of record" that indicated "only occasionally using a cane to ambulate" (Tr. 43 (citing Tr. 2381)).

Thus, the ALJ's conclusion regarding the medical necessity of a cane, or lack thereof, seems to be based on a belief that records subsequent to Dr. Peterson's evaluation show reduced use of a cane. However, the single page of medical evidence cited by the ALJ to support this assumption, Tr. 2381, comes from treatment notes dated October 3, 2022—*before* Dr. Peterson issued his opinion on November 29, 2022. Indeed, Dr. Peterson's opinion shows he reviewed the treatment notes at issue when making his finding that the cane was medically necessary (Tr. 95). What few pieces of medical evidence there are that postdate Dr. Peterson's opinion do not indicate whether Plaintiff's use of cane was reduced, but state only that Plaintiff's gait was "antalgic but stable with a quad cane" (Tr. 2593).

Further, the page cited by the ALJ does not state that Plaintiff's use of a cane had decreased. Rather, it states that after Plaintiff underwent peripheral angioplasty in June of

2022, she was able to walk longer before needing to rest due to fatigue (Tr. 2381)—it does not indicate whether she was using a cane while walking or whether her balance without a cane had improved.[3] In contrast, physical therapy records from the same week describe Plaintiff as only walking independently with use of a quad cane (Tr. 2377). Even assuming these treatment notes do indicate reduced use of a cane in October of 2022, the record shows Plaintiff was subsequently admitted to the hospital for increased pain and numbness in her lower right extremity caused by occlusion of stents previously inserted the prior June, resulting in another angioplasty procedure (Tr. 2400-2532). Given these later developments, it was insufficient to conclude the use of a cane was not medically necessary with reference only to treatment notes dated *prior* to Plaintiff's most recent hospitalization and associated worsening symptoms.

To be sure, the record is somewhat inconsistent as to Plaintiff's use of a cane. Some records state that Plaintiff uses a quad cane most of the time (Tr. 2598), while others only indicate occasional use (Tr. 2316). When such inconsistencies exist, it is entirely within the ALJ's discretion to determine which portions of the record she finds most credible, *Brewer v. Chater*, 103 F.3d 1384, 1392 (7th Cir. 1997), so long as she provides an explanation with a "logical bridge" between the evidence and her conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). Here, however, the ALJ's explanation appears to be based on a misreading of a single page of the record and does not address the multiple pieces of medical evidence suggesting Plaintiff's use of a cane may be necessary, especially following her most recent hospitalization.

---

[3] Indeed, the same record states that Plaintiff had experienced two falls due to loss of balance between the procedure and her follow-up appointment (Tr. 2381). This suggests that even as Plaintiff's pain and fatigue (which necessitated resting after walking short distances) had improved, her *balance* (which necessitated the use of a cane) had not.

While the ALJ is not required to specifically address every individual piece of evidence contrary to her determination, she must provide enough of an explanation to allow the claimant to follow her reasoning and understand why certain pieces of evidence were rejected. *See Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("While we have never required an ALJ to address every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits."). For the reasons given above, the ALJ failed to do so here, and thus her conclusion regarding the medical necessity of Plaintiff's cane is not based on substantial evidence. Remand is therefore necessary.

This Memorandum and Order should not be construed as an indication that the Court believes that Plaintiff is disabled or that she should be awarded benefits. The Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

After careful review of the record, the Court finds the ALJ's decision is not supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **REVERSED** and the case **REMANDED** to the ALJ for further consideration consistent with this Order. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff and close this case.

**IT IS SO ORDERED.**

**DATED: October 2, 2025.**

_____
**STACI M. YANDLE**
**United States District Judge**